# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JASON MORRIS, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 17-1813-RGA |
| | : | |
| CLAIRE DEMATTEIS, Commissioner, | : | |
| ROBERT MAY, Warden, and ATTORNEY | : | |
| GENERAL OF THE STATE OF DELAWARE, | : | |
| | : | |
| Respondents.[1] | : | |

---

## MEMORANDUM OPINION

Christopher S. Koyste, Wilmington, Delaware.  Attorney for Petitioner.

Kathryn Joy Garrison, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

March 29, 2021
Wilmington, Delaware

---

[1]Commissioner Claire DeMatteis and Warden Robert May have replaced former Commissioner Robert M. Coupe and former Warden Dana Metzger, original parties to this case.  *See* Fed. R. Civ. P. 11(d).

/s Richard G. Andrews
ANDREWS, UNITED STATES DISTRICT JUDGE:

Pending before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Jason Morris.  (D.I. 2)  The State filed an Answer in opposition, to which Petitioner filed a Reply.  (D.I. 17; D.I. 18)  For the reasons discussed, the Court will deny Petitioner's § 2254 Petition.

## I.  BACKGROUND

On January 25, 2010, Petitioner pled guilty to possession with intent to deliver cocaine ("PWITD") and second degree conspiracy.  (D.I. 16 at 47-61; D.I. 17 at 1-2)  On that same day, the Superior Court sentenced Petitioner as follows: (1) for PWITD, as an habitual offender to twelve years of Level V incarceration; and (2) for second degree conspiracy, to two years at Level V, suspended for six months of Level IV confinement, followed by eighteen months of Level III probation.  (D.I. 16 at 60-61; D.I. 17 at 2)  Petitioner did not file a direct appeal.

On March 1, 2010, Petitioner filed a motion to modify his sentence, which the Superior Court denied on May 18, 2010.  (D.I. 16 at 7)

On May 8, 2015, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion").  (D.I. 16 at 8). The Superior Court appointed the Office of Conflict Counsel to represent Petitioner.  (*Id.*)  On April 1, 2016, Petitioner's counsel filed an amended Rule 61 motion, asserting that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to inform Petitioner prior to the entry of his plea about an evidence mishandling scandal at the Office of the Chief Medical Examiner ("OCME").  (D.I. 16-6 at 34-89)  Petitioner also contended that his lack of knowledge about the OCME evidence mishandling was material to his decision to plead guilty and, therefore, his guilty plea was involuntary pursuant to *Brady v. United States*, 397 U.S. 742, 748 (1970).  (*Id.*)  The Superior

Court denied the Rule 61 motion on November 16, 2016.  *See State v. Morris*, 2016 WL

7229892, at *5 (Del. Super. Ct. Dec. 12, 2016).  The Delaware Supreme Court affirmed that

decision on October 18, 2017.  *See Morris v. State*, 173 A.3d 85 (Table), 2017 WL 4711480

(Del. Oct. 18, 2017).

On December 18, 2017, Petitioner filed the § 2254 Petition pending before the Court.

The State asserts that the Petition should be denied as time-barred and, alternatively, as meritless.

The relevant information regarding the OCME evidence mishandling is set forth below:

> In February 2014, the Delaware State Police ("DSP") and the
> Department of Justice ("DOJ") began an investigation into
> criminal misconduct occurring in the Controlled Substances Unit
> of the OCME.
>
> The investigation revealed that some drug evidence sent to
> the OCME for testing had been stolen by OCME employees in
> some cases and was unaccounted for in other cases. Oversight of
> the lab had been lacking, and security procedures had not been
> followed. One employee was accused of "dry labbing" (or
> declaring a test result without actually conducting a test of the
> evidence) in several cases. Although the investigation remains
> ongoing, to date, three OCME employees have been suspended
> (two of those employees have been criminally indicted), and the
> Chief Medical Examiner has been fired.
>
> There is no evidence to suggest that OCME employees tampered
> with drug evidence by adding known controlled substances to the
> evidence they received for testing in order to achieve positive
> results and secure convictions. That is, there is no evidence that
> the OCME staff "planted" evidence to wrongly obtain convictions.
> Rather, the employees who stole the evidence did so because it in
> fact consisted of illegal narcotics that they could resell or take for
> personal use.

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).

## II.     PETITION IS NOT TIME-BARRED

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

Petitioner's § 2254 Petition, filed in 2017, is subject to the one-year limitations period contained in § 2244(d)(1).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The State contends that the starting date for the limitations period is February 24, 2010, the date on which Petitioner's conviction became final.  (D.I. 17 at 8)  Petitioner, however, appears to assert that he is entitled to one of two later starting dates for AEDPA's limitations period under § 2244(d)(1)(D), either: (1) January 14, 2014, because that is the earliest date the OCME evidence misconduct was discovered (D.I. 2 at 10);  or (2) April 15, 2014, because that is date on which

3

the State began to notify defendants in active cases that multiple cases had been compromised by

the OCME evidence scandal.  (D.I. 2 at 10).

Petitioner's primary claim is that his guilty plea was rendered involuntary under *Brady v. United States* because the State's failure to disclose the OCME evidence misconduct scandal prior to his plea violated *Brady v. Maryland*.  I have previously determined how to address the timeliness of cases asserting *Brady*/involuntary guilty plea claims premised on the OCME evidence misconduct scandal.  *See Owens v. DeMatteis*, 2019 WL 4722654 (D. Del. Sept. 26, 2019); *Trower v. DeMatteis*, 2019 WL 4722711 (D. Del. Sept. 26, 2019); *Wright v. DeMatteis*, 2019 WL 4806146 (D. Del. Sept. 30, 2019); *McNeill v. DeMatteis*, 2019 WL 4820035 (D. Del. Sept. 30, 2019).  Basically, for purposes of the inquiry under § 2244(d)(1)(D), whether or not the OCME misconduct affected, or could have affected, Petitioner's decision to plead guilty depends on whether the drugs in his case were tested by the OCME and the results were provided to him prior to entering a plea.  Therefore, in order to trigger a later starting date under § 2244(d)(1)(D) for the instant involuntary plea/*Brady* claim, Petitioner must show that (1) the drug evidence in his case was tested by the OCME and he received the results of the test before entering a plea; and (2) exercising due diligence, he could not have learned that the evidence in his case may have been part of the compromised drug evidence involved in the OCME scandal until April 15, 2014.  For the following reasons, the Court concludes that Petitioner has met this burden.

First, Petitioner pled guilty on January 25, 2010.  The letter transmitting the OCME report concerning the drug evidence in this case to Petitioner's defense counsel is signed and dated January 4, 2010, and presumably, the OCME report was provided to Petitioner on or around that date.  (D.I. 17-1 at 1)  Second, facts sufficient to provide a basis for a good faith claim that state employees engaged in impermissible conduct were not available to defense

counsel representing other prisoners until April 15, 2014 when, as part of its *Brady v. Maryland* obligation, the State informed other defendants that all drug evidence housed at the lab was susceptible to compromise.[2]  (D.I. 23 at 7)

Given these circumstances, the Court concludes that AEDPA's limitations period in this case began to run on April 15, 2014.[3]   Accordingly, to comply with the one-year limitations period, Petitioner had to file his § 2254 petition by April 15, 2015.  *See Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005) (holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27,

---

[2]Although the Delaware State Police ("DSP") began its investigation into compromised drug evidence on January 15, 2014, and the Attorney General's office informed defense counsel on February 21, 2014 that an investigation into the evidentiary practices at the OCME had started on February 20, 2014, the Court concludes that sufficient facts for the instant argument were not available until the State provided the relevant information on April 15, 2014. *See Biden: Investigation of State Medical Examiner's Drug Lab Reveals Systemic Failings, Urgent Need for Reform*, Dep't of Justice, Att'y Gen.'s Website (June 19, 2014), https://news.delaware.gov/2014/06/19/biden-investigation-of-state-medical-examiners-drug-lab-reveals-systemic-failings-urgent-need-for-reform/.

[3]The State relies on *Harmon v. Johnson*, 2016 WL 183899, at *3 (D. Del. Jan. 14, 2016) to support its argument that § 2254(d)(1)(D) is inapplicable and therefore cannot trigger a later starting date in Petitioner's case. The Court disagrees, because *Harmon* is distinguishable. Harmon argued that his conviction should be vacated because the State violated *Brady v. Maryland* by failing to disclose its knowledge of the OCME drug evidence scandal during his plea process and by waiting until long after his conviction in 2012 to disclose the tampering.  *See Harmon*, 2016 WL 183899, at *2-3.  However, since the drug evidence in *Harmon* was never sent to the OCME for testing, the court found that the revelation of the OCME scandal in 2014 could not constitute a new factual predicate for Harmon's substantive *Brady v. Maryland* claim. *Id*.  Here, unlike Harmon, Petitioner argues that the alleged lack of knowledge of the OCME misconduct was material to his decision to plead guilty, thereby rendering his guilty plea involuntary under *Brady v. United States*.  In addition, unlike in *Harmon*, the drug evidence in Petitioner's case was sent to the OCME for further testing after the initial field test, and Petitioner received a copy of the OCME report prior to pleading guilty.  Thus, given these circumstances, the Court concludes that the revelation of the OCME scandal constitutes a new factual predicate for Petitioner's instant argument.

2015) (AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the date it began to run).

Petitioner did not file the instant § 2254 Petition until December 18, 2017, approximately two years and eight months after the expiration of AEDPA's statute of limitations. Therefore, the Petition is time-barred, unless the limitations period can be statutorily or equitably tolled. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

**A. Statutory Tolling**

Pursuant to § 2244(d)(2), a properly filed application for state collateral review tolls AEDPA's limitations period during the time the application is pending in the state courts, including any post-conviction appeals, provided that the application is filed during AEDPA's one-year limitations period. *Swartz v. Meyers*, 204 F.3d 417, 424-25 (3d Cir. 2000). However, the limitations period is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

Here, when Petitioner filed his Rule 61 motion on May 8, 2014, twenty-three days of AEDPA's limitations period had already expired. The Rule 61 motion tolled the limitations from May 8, 2014 through October 18, 2017, the date on which the Delaware Supreme Court affirmed the Superior Court's denial of the motion. The limitations clock started to run again on October 19, 2017, and ran 59 days until Petitioner filed the instant Petition on December 18, 2017. Therefore, the Petition is timely.

6

III.   **STANDARD OF REVIEW**

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).   A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground.   *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial.   *See* 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).   This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."   *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011).

Finally, a federal court must presume that the state court's determinations of factual issues are correct.   *See* 28 U.S.C. § 2254(e)(1); *see also Appel*, 250 F.3d at 210.   This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary.   *See* 28 U.S.C. § 2254(e)(1); *see also Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV.   DISCUSSION

Following the discovery of the evidence mishandling at the OCME, Delaware's Office of

Defense Services ("ODS") and conflict counsel filed more than 700 Rule 61 motions on behalf

of numerous defendants convicted of drug-related charges.  Since the underlying legal issues

raised in these motions were largely the same, the Superior Court crafted a procedure for

efficiently and logically addressing the majority of the Rule 61 motions.  As the Court explained

in *State v. Irwin*:

> The investigation, although still ongoing, has thus far resulted in three OCME employees being suspended, two of those employees being indicted in this Court, and the firing of the Chief Medical Examiner.  However, the full extent of the criminal conduct at the OCME drug lab is still unknown.
>
> The issues uncovered, and those anticipated to be revealed as the investigation continues, have prompted hundreds of motions from indicted and convicted defendants at all stages of the criminal process.  In an attempt to logically and procedurally address these motions, the Court decided to first attempt to address cases that were awaiting trial.  To do so, the Court reached out to the State and the defense bar to schedule hearings on pending matters within that category.  With the professional coordination of all parties involved, the Court has held two hearings to gather evidence regarding the events at the OCME drug lab.  The first hearing, which started on July 8, 2014, involved defendants Dilip Nyala ("Nyala") and Michael Irwin ("Irwin").  The second hearing, which was held in late August 2014, involved defendants Hakeem Nesbitt ("Nesbitt") and Braaheim Reed ("Reed").  During that August hearing, testimony uncovered that evidence in the Reed case had a significant discrepancy between what the officers seized and what was actually tested at the independent lab retained by the State.  As a result, the State entered a *nolle prosequi* of the Reed case.  Therefore, this Court's decision relates only to the Nesbitt, Irwin and Nyala cases.  By deciding these three cases the Court's intent is to establish a framework for addressing the volume of cases awaiting trial for drug offenses that at one time were stored at the OCME drug lab.  The facts surrounding these specific cases involve drug evidence that was sent to the OCME drug lab for testing but was never actually tested by a chemist at that location. **However, it is expected that the Court's ruling will also have an**

>**impact on cases where the drugs were tested by the OCME
>drug lab, and potentially the hundreds of petitions that have
>been filed pursuant to Superior Court Criminal Rule 61.**
>
>Defendants are challenging the State's ability to use drug evidence
>at trial through filing various motions *in limine*.  The Court will
>first highlight the specific factual and procedural background of
>each case, summarize guidance found from other jurisdictions
>facing similar drug lab improprieties, decide the principles to be
>used for cases involving drug evidence sent to the OCME drug lab
>and finally apply those principles to each specific defendant.

*State v. Irwin*, 2014 WL 6734821, at *1–2 (Del. Super. Ct. Nov. 17, 2014) (emphasis added)

(footnote omitted).  Similarly, in *State v. Miller*, the Superior Court explained:

>The instant motions are just a small sample of the influx of filings
>made by and on behalf of over 700 criminal defendants following
>what has come to be known as "the OCME scandal." **The ODS
>hand-selected the motions in these eight cases for the Court to
>decide and, because motions filed by the ODS in other cases
>are identical to those involved here, its decision in these
>matters should resolve many of the pending Rule 61 motions
>before the Court.**

*State v. Miller*, 2017 WL 1969780, at *1 (Del. Super. Ct. May 11, 2017) (emphasis added).  Two

other pivotal decisions often cited by the Delaware state courts when adjudicating the numerous

other Rule 61 motions based on the OCME evidence mishandling scandal are *[Ira] Brown v.

State*, 108 A.3d 1201 (Del. 2015) and *Aricidiacono v. State*, 125 A.3d 677 (Del. 2015).

Petitioner presented in his own Rule 61 motion the same two inter-related arguments

presented by many of the other 700 defendants: (1) the State violated *Brady v. Maryland* when it

failed to disclose the drug evidence scandal at the OCME during Petitioner's plea process in

January 2010 (D.I. 16-6 at 53-65); and (2) Petitioner's lack of knowledge about the OCME drug

evidence scandal was material to his decision to plead guilty, thereby rendering his guilty plea

involuntary pursuant to *Brady v. United States*.  (D.I. 16-6 at 65-67)

9

In his Rule 61 proceeding, Petitioner attempted to distinguish his case from the other

OCME evidence mishandling cases with the following argument:

> Recent Delaware Supreme Court cases addressing the OCME scandal have primarily focused on the impact the scandal has had on plea cases.  However, none of them address whether the State violated *Brady* [*v. Maryland*] when a defendant accepted a plea on the eve of trial with the potential jury wait[ing] to be selected.  In *Ira Brown [v. State*, 108 A.3d 1201, 1204-05 (Del. 2015)], the Delaware Supreme Court, relying on *United States v. Ruiz,* [536 U.S. 622 (2002)], held that a defendant who admits his guilt when he plead guilty, is not permitted to have his case reopen[ed] to make claims challenging the chain of custody.  As previously argued, *Ruiz* should only read to apply to fast track cases months before trial.    Additionally, the Delaware Supreme Court erroneously held that "*Ruiz* prevents [a defendant] from reopening his case to make claims that do not address his guilty plea, and involve impeachment evidence that would only be relevant at trial."  This is incorrect as the decision to accept the plea is based in part upon the strength of the State's case and would include factoring in information that could be used to challenge the State's evidence.  [Petitioner's] acceptance of the plea on the eve of trial was based upon the notion that the State had provided all *Brady* [*v. Maryland*] information that it possessed and was required to disclose in anticipation of trial.  When the State did not disclose any *Brady* [*v. Maryland*] information on the eve of trial, [Petitioner] only then decided to accept the plea.  The Delaware Supreme Court's holding in effect allows the State to withhold crucial *Brady* [*v. Maryland*] information from a defendant in the hopes that they will accept a plea […].

(D.I. 16-6 at 81-82)  Petitioner argued, "*Ruiz* should only be read to hold that the government is

not required to disclose impeachment information to a defendant in a fast track plea agreement

setting.  For a plea on the eve of trial or during trial, the normal requirements of *Brady* must

apply, as *Ruiz* does not touch upon this issue."  (D.I. 16-6 at 76)

The Superior Court rejected Petitioner's interpretation of *Ruiz* and his attempt to

distinguish his case from the other Rule 61 OCME evidence mishandling cases.  Relying on the

Delaware Supreme Court's decision in *Ira Brown v. State*, the Superior Court denied Petitioner's

Rule 61 motion as meritless:

> Like other recent Rule 61 movants, [Petitioner] identifies only impeachment evidence that would have affected his decision to accept the plea. While the argument headings and several passages contain passing reference to exculpatory evidence, the argument itself connects that language with no examples of exculpatory evidence related to the OCME scandal.
>
> And thus, like other recent Rule 61 movants, [Petitioner's] plea of guilty, made knowingly, intelligently, and voluntarily, prevents him from attacking his plea or conviction on *Brady* grounds when his sole allegation is that the State did not provide impeachment evidence to him. He waived the right to receive such evidence by his plea. As *Ruiz* and the Delaware Supreme Court have made clear, *Brady* is not implicated by [Petitioner's] acceptance of a plea agreement.
>
> There can be no question on this record that [Petitioner's] plea was knowingly, intelligently, and voluntarily. He signed his name to possessing cocaine on not one but two separate forms: the plea agreement form and the Truth-in-Sentencing form. When asked by this Court whether he was pleading guilty because he was in fact guilty, he responded in the affirmative. Nothing in the circumstances of the plea colloquy or any of the evidence brought forward by [Petitioner] leads the Court to doubt its earlier conclusion that [Petitioner's] plea was valid.
>
> [Petitioner] would have us reverse our Supreme Court's interpretation of *Ruiz*, arguing that its holding was "erroneous[ ]" and "incorrect." This Court can discern no reason to depart from our Supreme Court's binding precedent. Nor is it disposed to search high and low for such a reason:
>
>> For it is an established rule to abide by former precedents, where the same points come again in litigation: as well to keep the scale of justice even and steady, and not liable to waver with every new judge's opinion; as also because the law in that case being solemnly declared and determined, what before was uncertain, and perhaps indifferent, is now become a permanent rule, which it is not in the breast of any subsequent judge to alter or vary from according to his private sentiments: he being sworn

> to determine, not according to his own private judgment, but according to the known laws and customs of the land; not delegated to pronounce a new law, but to maintain and expound the old one.
>
> Put in more concrete terms, under the doctrine of *stare decisis*, "[o]nce a point of law has been settled by decision of [our Supreme] Court, 'it forms a precedent which is not afterwards to be departed from or lightly overruled or set aside ... and [it] should be followed except for urgent reasons and upon clear manifestation of error." ' The doctrine "operates to fix a specific legal result to facts in a pending case based on judicial precedent directed to identical or similar facts in a previous case in the same court or one higher in the judicial hierarchy." The Court thus declines [Petitioner']s invitation to depart from the interpretation that has been settled upon by the Delaware Supreme Court.
>
> His attempt to distinguish his case from all the contrary cases decided by the Delaware Supreme Court likewise falls far short of the mark. The essential point of distinction [Petitioner] propounds is that "none of [the Court's decisions] address whether the State violated *Brady* when a defendant accepted a plea on the eve of trial with the potential jury waiting to be selected." But it appears that [Petitioner] has not assiduously examined the record in those cases. For example, *Ira Brown v. State*, which [Petitioner] references in the very same paragraph, involved a defendant who pleaded guilty on the day he was scheduled for trial.
>
> Because [Petitioner] waived his right to receive impeachment material when he knowingly, voluntarily, and intelligently pleaded guilty, he has not asserted a colorable claim that there was a miscarriage of justice under *Brady v. Maryland*.

*State v. Morris*, 2016 WL 7229892, at *4–5 (Del. Super. Ct. Dec. 12, 2016). Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment "on the basis of and for the reasons stated in its December 12, 2016 order." *Morris*, 2017 WL 4711480, at *1.

In this case, Petitioner alleges two Claims for relief: (1) the Delaware state courts erroneously concluded that Petitioner was precluded from withdrawing his guilty plea made on

the day of trial[4] when the State failed to comply with its *Brady v. Maryland* obligations; and (2) the Delaware state courts erroneously denied Petitioner's ability to further develop the factual record in relation to his postconviction claim.  (D.I. 2 at 2; D.I. 15 at 2)

### A.  Claim One: The Effect of the State's Alleged Violation of *Brady v. Maryland* on Petitioner's Guilty Plea

On the surface, Petitioner's contention in Claim One appears fairly straightforward, namely, that the Delaware state courts erroneously concluded that Petitioner was precluded from withdrawing his guilty plea. (D.I. 2 at 2; D.I. 15 at 2)  The Court, however, has found nothing in the record to indicate that Petitioner formally asked to withdraw his guilty plea during the Rule 61 proceeding, and the Delaware state court decisions do not phrase the issue in Petitioner's Rule 61 proceeding as a request to withdraw his guilty plea.[5]  In addition, Petitioner's presentation of the arguments in support of Claim One in this proceeding reveal that the Claim actually consists of two prongs.[6]  First, and what the Court identifies as Claim One (A), Petitioner contends that

---

[4] I assume for the purposes of this opinion that the guilty plea was on the day of trial.  The docket sheet, however, suggests a different gloss on the proceedings.  It shows that trial was scheduled for January 19, 2010.  At final case review on January 13, 2010, the docket entry is "Case Review Calendar Final Case Review Continued.  Defendant's Request-for Plea on 1-25-10." There is no entry for January 19th.  On January 25th, the entry is, "Trial Calendar/Plea Hearing: Pled Guilty and Sentenced."  (D.I. 16 at A2, Entries 14, 19, 22).  On the other hand, the plea transcript refers to "today's plea offer."  (*Id*. at A47).

[5]In fact, the final sentence in Petitioner's Amended Rule 61 motion uses the following language: Petitioner's "conviction and sentence must be reversed and remanded for a trial and the State must disclose all *Brady* information to [Petitioner]."  (D.I. 16-6 at 88)

[6]For instance, the title of Claim One in the Petition and Memorandum in Support is as follows: "The State courts erroneously concluded that Petitioner was precluded from withdrawing his guilty plea made on the day of trial when the State failed to comply with its *Brady v. Maryland* Obligations."  (D.I. 2 at 10; D.I. 15 at 22)  The documents then present three subarguments to support Claim One: (A) "The State violated *Brady v. Maryland* by failing to provide [Petitioner] with exculpatory and impeachment information regarding the OCME's misconduct which affected the reliability of its work product and the credibility of its employees" (D.I. 15 at 37); (B) "The State Court erroneously concluded that Petitioner was precluded from withdrawing his guilty plea due to the State's failure to timely provide *Brady* information" (D.I. 2 at 21; D.I. 15 at

that the State violated *Brady v. Maryland* by failing to disclose to Petitioner before he entered his guilty plea the information about the OCME evidence mishandling scandal, and that the Delaware state courts unreasonably applied *Brady v. Maryland* and *Ruiz* in holding otherwise. (D.I. 18 at 10-12)  Second, and what the Court identifies as Claim One (B), Petitioner contends that the State's *Brady v. Maryland* violation amounted to inducement or coercion, and that the Delaware state courts unreasonably applied *Brady v. United States* and unreasonably determined the facts when holding that the State's *Brady v. Maryland* violation did not render his guilty plea involuntary.  (D.I. 18 at 12-14)  This two-pronged argument mirrors the argument Petitioner presented in his Rule 61 proceeding[7] which, as previously explained, the Delaware state courts denied as meritless.  Therefore, Petitioner will only be entitled to habeas relief if the Delaware state court decisions[8] were either contrary to, or an unreasonable application of, clearly established federal law or, with respect to Claim One (B), constituted an unreasonable determination of the facts based on the evidence adduced in connection with the Rule 61 proceeding.

---

44); and (C) "The State failed to consider that the State's non-disclosure of *Brady* materials induced Petitioner into pleading guilty" (D.I. 2 at 24; D.I. 15 at 50).  A more in-depth review of the Petition and Petitioner's supporting memorandum, however, reveals that subarguments (A) and (B) really comprise one subargument, namely, that the state courts erroneously applied *Brady v. Maryland* and *Ruiz* in concluding that the State's failure to timely inform Petitioner about the OCME evidence mishandling scandal did not violate *Brady v. Maryland*.  Similarly, subargument (C) presents a separate but related contention, namely, that the alleged *Brady v. Maryland* violation rendered Petitioner's guilty plea involuntary under *Brady v. United States*.

[7](D.I. 16-6 at 74-88)

[8]The Delaware Supreme Court summarily affirmed the Superior Court's decision "on the basis of and for the reasons stated" in that decision.  Therefore, the Court will refer to the Delaware state courts rather than the Delaware Supreme Court.  *Morris*, 2017 WL 4711480, at *1.

### 1.  **Claim One (A): *Brady v. Maryland* and *United States v. Ruiz***

Petitioner contends that the Delaware state courts unreasonably applied *Brady v.*

*Maryland* and *Ruiz* in holding that the State did not violate *Brady v. Maryland* by failing to

timely disclose material exculpatory and impeachment materials regarding the OCME evidence

mishandling.  For the following reasons, the Court rejects Petitioner's argument.

The clearly established federal law governing the State's disclosure requirements to a

defendant is articulated in *Brady v. Maryland* and its progeny, *United States v. Ruiz*.  Pursuant to

*Brady v. Maryland*, "[p]rosecutors have an affirmative duty 'to disclose [*Brady*] evidence ... even

though there has been no request [for the evidence] by the accused,' which may include evidence

known only to police." *Dennis v. Sec'y, Pa. Dep't of Corrs.,* 834 F.3d 263, 284 (3d Cir. 2016).

"To comply with *Brady*, prosecutors must 'learn of any favorable evidence known to the others

acting on the government's behalf.'" *Id*.  In order to prevail on a *Brady v. Maryland* claim, a

petitioner must establish that: (1) the evidence at issue was favorable to the accused, either

because it was exculpatory or it had impeachment value; (2) the prosecution suppressed the

evidence, "either willfully or inadvertently;" and (3) the evidence was material.  *See Strickler v.*

*Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004).

In *Ruiz*, the United States Supreme Court specifically held that the Government is not

constitutionally required to disclose material impeachment evidence prior to entering a plea

agreement with a criminal defendant.  *See Ruiz*, 536 U.S. at 633.  The *Ruiz* Court explained:

> It is particularly difficult to characterize impeachment information
> as critical information of which the defendant must always be
> aware prior to pleading guilty given the random way in which such
> information may, or may not, help a particular defendant.  The
> degree of help that impeachment information can provide will
> depend upon the defendant's own independent knowledge of the
> prosecution's potential case—a matter that the Constitution does
> not require prosecutors to disclose.

*Ruiz*, 536 U.S. at 629.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware state courts correctly identified the *Brady v. Maryland* and *Ruiz* standards applicable to Claim One (A).  Consequently, the Delaware state court decisions were not contrary to clearly established federal law.  *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court's inquiry is not over, because it must also determine if the Delaware state courts unreasonably applied the *Brady v. Maryland* and *Ruiz* standards to the facts of Petitioner's case.[9]  Significantly, as recognized by the body of Delaware caselaw concerning the OCME misconduct scandal, the OCME evidence mishandling constitutes impeachment evidence that would only be useful if Petitioner had decided to go to trial.  *See Ira Brown*, 108 A.3d at 1205-06, n.30 (holding that OCME evidence mishandling investigation constitutes impeachment material in Brown's case and in fact patterns like it); *State v. Miller*, 2017 WL 1969780, at *6 (Del. Super. Ct. May 11, 2017) (stating that all the hundreds of Rule 61 motions asserting similar *Brady v. Maryland* claims argue that State suppressed valuable impeachment evidence when it failed to disclose that drugs submitted to OCME were being tampered with and/or stolen from lab).  Since *Ruiz* specifically held that the Government is not constitutionally required to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant, the

---

[9]As previously explained, Petitioner contends that the Delaware state courts improperly relied upon *Ira Brown* in denying Claim One.  However, since the *Ira Brown* Court based its denial of Brown's OCME evidence misconduct claim upon *Brady* and *Ruiz,* the proper focus here is whether the Delaware Supreme Court unreasonably applied *Brady v. Maryland* and *Ruiz* in Petitioner's case.

16

Delaware state courts reasonably applied clearly established federal law in denying Claim One (A).  *See Ruiz*, 536 U.S. at 633.

Petitioner, however, contends that *Ruiz* is inapplicable to his case because it should be interpreted as only applying to "guilty pleas which occur weeks and/or months prior to a trial date, in contrast to guilty pleas entered only moments before a trial begins."  (D.I. 15 at 46)  The Court is not persuaded.  First, and most importantly, Petitioner has not identified, and the Court has not found, any Supreme Court case limiting the rationale of *Ruiz* to the context of "fast track" plea bargaining.  In fact, the Supreme Court recently reaffirmed that "a guilty plea makes [case-related constitutional defects that occurred prior to the entry of the guilty plea] irrelevant to the constitutional validity of the conviction," "[b]ecause the defendant has admitted the charges against him." *Class v. United States*, 138 S.Ct. 798, 805-06 (2018).  The absence of any clearly established federal law supporting Petitioner's interpretation provides a sufficient reason for denying relief under § 2254(d)(1).

The Court also is not persuaded by Petitioner's interpretation of *Ruiz*.  Although the defendant in *Ruiz* was offered a "fast track" plea bargain, the *Ruiz* Court did not limit its holding to fast track cases.  Rather, the *Ruiz* Court framed the issue in broader terms.  It summarized the appellate decision as a guilty plea not being voluntary "unless the prosecutors first made the same disclosure of material impeachment information that the prosecutors would have had to make had the defendant insisted on a trial."  *Ruiz*, 536 U.S. at 629.  The Court then stated, "We must decide whether the Constitution requires that preguilty plea disclosure of impeachment information.  We conclude that it does not." *Id.*   In addition, the *Ruiz* Court did not use limiting language in its holding but, instead, stated broadly that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a

17

criminal defendant." *Id.* at 633.  Finally, *Ruiz*'s holding was based primarily on the nature of

impeachment evidence and its much greater importance to ensuring a fair trial rather than on

ensuring a voluntary guilty plea.  *Id.* at 629.

For these reasons, the Court concludes that the Delaware state courts did not

unreasonably apply *Brady v. Maryland* and *Ruiz* in holding that Petitioner was precluded from

withdrawing his guilty plea despite the State's failure to inform him before he entered his plea

about the OCME evidence mishandling scandal.

## 2.  Claim One (B): Voluntariness of plea under *Brady v. United States*

Next, Petitioner argues that the Delaware state courts unreasonably applied *Brady v.*

*United States* when denying his argument that the State's failure to disclose the OCME evidence

mishandling scandal before he entered his plea rendered his guilty plea involuntary.  (D.I. 18 at

14-16)  According to Petitioner, the Delaware state courts erred by focusing on his admission of

guilt during his plea colloquy, instead of "considering all of the relevant circumstances

surrounding" how the State secured his plea agreement, when holding that the failure to inform

him about the OCME evidence mishandling did not induce him to enter a guilty plea.  (D.I. 2 at

25; D.I. 15 at 45)

Petitioner presented this argument to the Superior Court in his Rule 61 motion.  The

Superior Court rejected the argument as meritless, relying on prior state court decisions

(*Aricidiacono* and *Ira Brown*) and *Brady v. United States.  See Morris*, 2016 WL 7229892, at *3.

The Delaware Supreme Court affirmed the Superior Court's holding for the reasons provided in

the Superior Court's decision.  Therefore, Petitioner's argument that the Delaware state courts

improperly rejected his involuntary plea argument will only warrant habeas relief if the Delaware

state court decisions were either contrary to, or an unreasonable application of, *Brady v. United*

*States*, or constituted an unreasonable determination of facts based on the evidence adduced in the Rule 61 proceeding.

In *Brady v. United States,* the Supreme Court held that a guilty plea is not rendered invalid merely because it is entered to avoid a harsher sentence.  In the Court's words:

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes).

*Brady v. United States*, 397 U.S. at 755; *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (explaining a defendant may challenge a conviction based on a guilty plea on the ground that the plea was not "voluntary and intelligent."); *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (noting that the "longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative choices of action open to the defendant.").  The Supreme Court further explained that a plea is involuntary if it is induced by "actual or threatened physical harm or by mental coercion overbearing the will of the defendant," or if the defendant is so "gripped" by fear or hope of leniency that he cannot "rationally weigh the advantages of going to trial against the advantages of pleading guilty." *Brady v. United States*, 397 U.S. at 750.  But a plea is not involuntary "whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Id*. at 751.

"[T]he voluntariness of [a defendant's] plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. at 749.  Although

19

the Supreme Court did not set forth in *Brady v. United States* a comprehensive list of the

"relevant circumstances" to be considered when assessing the voluntariness of a plea, the

Supreme Court specifically noted that a plea is not unintelligent just because later events prove

that going to trial may have been a wiser choice:

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.

*Brady v. United States*, 397 U.S. at 756–57.

The Supreme Court reaffirmed this principle in *McMann v. Richardson*, 397 U.S. 759

(1970), where it held:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute.  In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case . . .  Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

*Id.* at 769-70 (1970).  Thus,

20

> [t]he rule that a plea must be intelligently made to be valid does
> not require that plea be vulnerable to later attack if the defendant
> did not correctly assess every relevant factor entering into his
> decision.  A defendant is not entitled to withdraw his plea merely
> because he discovers long after the plea has been accepted that his
> calculus misapprehended the quality of the State's case.

*Brady v. United States*, 397 U.S. at 757.  In other words, "the Constitution, in respect to a

defendant's awareness of relevant circumstances, does not require **complete** knowledge of the

relevant circumstances, but permits a court to accept a guilty plea . . . despite various forms of

misapprehension under which a defendant might labor." *Ruiz*, 536 U.S. at 630 (emphasis

added).

Finally, it is well-settled that a petitioner challenging the voluntary nature of his plea on

habeas review faces a heavy burden.  *See Zilich v. Reid*, 36 F.3d 317, 320 (3d Cir. 1994).  The

"representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as

any findings made by the judge accepting the plea, constitute a formidable barrier in any

subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption

of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).  Notably, there is

> no requirement in the Constitution that defendant must be
> permitted to disown his solemn admissions in open court that he
> committed the act with which he is charged simply because it later
> develops that the state would have had a weaker case than the
> defendant had thought or that the maximum penalty then assumed
> applicable has been held inapplicable in subsequent judicial
> decisions.

*Brady v. United States*, 397 U.S. at 757.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware

state courts in Petitioner's case correctly identified the *Brady v. United States* standard applicable

to Claim One (B), as did the Delaware Supreme Court decision (*Aricidiacono*) referenced by the

21

Delaware state courts.  Therefore, the Delaware state courts' denial of the instant involuntary plea argument was not contrary to clearly established federal law.

The Court must also determine if the Delaware state courts unreasonably applied *Brady v. United States* to the facts of Petitioner's case when denying Claim One (B).  The instant case is just one in a series of cases concerning the OCME evidence mishandling that have been filed in the District of Delaware.  I have already considered and denied as meritless arguments identical to Petitioner's instant argument that the Superior Court unreasonably applied *Brady v. United States* by focusing on the defendant's admission of guilt during the plea colloquy.  In *McNeill v. DeMatteis*, for example, this Court held that the Delaware state courts' reliance on *Aricidiacono* when denying McNeill's involuntary plea/*Brady v. United States* argument demonstrated that the state courts had reasonably applied *Brady v. United States*' "totality of the circumstances" standard when rejecting McNeill's involuntary plea/*Brady v. United States* claim.  *See McNeill*, 2019 WL 4820035, at *6 -*13.  The Third Circuit recently declined to grant a certificate of appealability in *McNeill*, opining:

> Jurists of reason would not dispute the District Court's conclusion that the Delaware Supreme Court's rejection of [McNeill's] claim was not contrary to, nor an unreasonable application of, *Brady v. United States*. [. . .]  Among other things, jurists of reason would reject [McNeill's] contention that the Delaware Supreme Court added a threshold test to the standard in *Brady* and did not consider the relevant circumstances of the plea agreement as required by *Brady*.

(*See* D.I. 27 in *McNeill v. DeMatteis*, Civ. A. No. 16-822-RGA (D. Del)).

Since the Delaware state courts relied on *Aricidiacono* when rejecting Petitioner's argument that his lack of knowledge about the OCME misconduct induced him to enter a guilty plea, the Court applies the same reasoning as in *McNeill* and concludes that the Delaware state courts did not unreasonably apply *Brady v. United States* by focusing on Petitioner's admission

22

of guilt during the plea colloquy as one of the relevant circumstances required by *Brady v. United States* as a basis for denying Claim One (B).  Significantly, Petitioner does not dispute that the drugs seized and tested in his case were not what they were purported to be; he admitted his guilt during the plea colloquy; he does not assert his actual innocence; and he received a benefit by pleading guilty because he was originally charged with four drug charges, three of which were dropped as a result of his plea bargain. (D.I. 17 at 19-20; D.I. 18)

In addition, contrary to Petitioner's assertion, the Court finds that the Delaware state courts did not unreasonably determine the facts in rejecting Claim One (B).  Once again expressing his disagreement with the Delaware state courts' reliance on the Delaware Supreme Court decision in *Ira Brown*, Petitioner contends, the "Delaware Supreme Court failed to recognize that the factual environment had drastically evolved since its decision in [*Ira*] *Brown*." (D.I. 2 at 23-24; *see also* D.I. 15 at 48-50)

To reiterate, the Delaware state courts relied on several prior state court decisions – and explicitly cited *Aricidiacono* and *Ira Brown* – when denying Petitioner's argument that the failure to disclose the OCME misconduct rendered his guilty plea involuntary.  In *Aricidiacono*, the Delaware Supreme Court held that "the poor evidence-handling practices at the OCME, however regrettable," did not entitle defendants who had freely admitted their guilt when pleading guilty to relief under Rule 61.  *See Aricidiacono*, 125 A.3d at 678-79.  The *Aricidiacono* Court found that, even if it were assumed that the conduct at the OCME amounted to egregious government misconduct, "this conduct did not materially affect any of the pleas."  *Id*. at 680 n.24.  Consistent with *Aricidiacono*, and as noted by Petitioner, the Delaware Supreme Court found in *Ira Brown*, "There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances they received for testing" or that they had

"planted" evidence. *See Ira Brown*, 108 A.3d at 1204-05. By relying on *Ira Brown* and

*Aricidiacono*, the Delaware state courts in Petitioner's case implicitly adopted the same factual

determination that Petitioner's case was not affected by the overall evidence mishandling at the

OCME.

Petitioner, however, complains that Delaware state courts in his case erred in relying on

*Ira Brown* and *Aricidiacono,* because the following "facts" had changed after *Ira Brown* and

*Aricidiacono* were decided:

> Forensic Chemist Irshad Bajwa was suspended and later
> terminated after evidence he certified as cocaine was found to not
> be any illegal substance. The Delaware Courts were also not
> aware at the time of its decision in *Ira Brown* how pervasive the
> misconduct at the OCME was. More specifically, the Delaware
> Courts were not aware that the forensic chemist Patricia Phillips
> would be terminated after three reported incidents of evidence
> mishandling. Nor were the Delaware Courts aware that Bipin
> Mody would be terminated for disregarding OCME policies and
> procedures and for failing to timely perform drug analyses,
> information that the DOJ erroneously concluded was not *Brady*.

(D.I. 15 at 50) In essence, Petitioner appears to argue that the Delaware state courts

unreasonably determined that the circumstances of his case did not differ sufficiently enough

from the circumstances in *Ira Brown* and *Aricidiacono* to find a link between the overall OCME

evidence misconduct and Petitioner's decision to enter a guilty plea.

Since Petitioner challenges the factual basis of the Delaware state court decisions, the

relevant inquiry is whether those decisions were "based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

When performing this inquiry, the Court must presume that the Delaware state courts' factual

findings are correct unless rebutted by clear and convincing evidence. *See 2*8 U.S.C. §

2254(e)(1).

24

After reviewing Petitioner's argument in the context of the entire record, the Court concludes that Petitioner has failed to provide clear and convincing evidence rebutting the Delaware state courts' implicit factual determination that Petitioner failed to distinguish his circumstances from those in *Ira Brown* and *Aricidiacono* sufficiently enough to demonstrate a link between the general OCME evidence mishandling scandal and his case.  Although Petitioner contends that "the factual environment [had] drastically evolved from the time [the Delaware Supreme Court] decided *Ira Brown*," (D.I. 15 at 38), Petitioner fails to demonstrate how the alleged "drastic" change affected his case.  For instance, the "newly evolved" information regarding the misconduct of chemists Bajwa and Mody is irrelevant because those individuals did not analyze the drugs in Petitioner's case.  Rather, forensic chemist Theresa Moore analyzed the drugs in his case.  (D.I. 17-1 at 3)  Also irrelevant is the fact that forensic chemist Patricia Phillips was subsequently terminated for disregarding OCME policies, because: (1) Phillips did not analyze the drugs in Petitioner's case; and (2) Phillips' alleged misconduct occurred in 2014 and 2015,[10] long after the evidence in Petitioner's case was tested in 2010.

In addition, during a recorded interview with the police, Petitioner admitted that he "sells crack cocaine to help pay the bills."  (D.I. 16-9 at 64)  As for the discrepancies "in the reported weights of the marijuana and cocaine" — which Petitioner does not explain — the Court presumes Petitioner means any difference between the weight of the drugs at the time of seizure (D.I. 16 at 36-39) and the different weights attributed to the drugs seized from Petitioner and one of his co-conspirators that were included in the OCME report  (D.I. 16 at 46).[11]  However, while

---

[10] "[T]hree incidents of evidence mishandling le[d] to [Phillips's] suspension and resignation […] in 2015."  *Miller*, 2017 WL 1969780, at *8. (*See* D.I. 16-3 at A355 & A359; D.I. 16-4 at A423).

[11] It is a stretch to say the differences between the police reports and the OCME report are "discrepancies."  The police report describes crack cocaine seized during a car stop as "approximately 0.1 gram" and the OCME report describes it as having "a net weight of 0.16

such differences provide a basis for cross-examination and may result in impeachment, the differences are not exculpatory, and are not indicative of actual innocence.  *See Word v. Carroll*, 2004 WL 1941342, at *4 (D. Del. Aug. 31, 2004).  Finally, Petitioner's conviction for PWITD (16 Del. Code § 4751) did not depend upon the weight of the controlled substances, nor did the offenses for which he was indicted.  (D.I. 16 at 39-45).  After considering these circumstances together with Petitioner's failure to assert his factual innocence during the plea colloquy or in this proceeding, the Court concludes that the Delaware state courts did not unreasonably determine the facts by holding that the existence of overall misconduct at the OCME was insufficient to establish that Petitioner's case was tainted by the same misconduct.

As explained by the Superior Court in *State v. Irwin*, another Delaware post-conviction case concerning the OCME misconduct cited by the *Aricidiacono* Court:[12]

> [T]o the extent that there are discrepancies between the drugs seized from a defendant and those tested by the lab, the individual possibly responsible for that conduct has not been identified. . . . [A]s best the Court can ascertain, and the parties have not provided evidence to the contrary, none of the cases in other jurisdictions that have led to the investigation of a particular crime lab have ever resulted in all of the evidence being found unreliable and inadmissible simply because that evidence was stored or tested at the lab that has been compromised.

*          *          *

---

grams" (*compare* D.I. 16 at A31 *with* A41).  The police report describes crack cocaine seized from another person as five bags weighing "approximately 2.5 grams" and the OCME report describes it as five bags "with a total net weight of 2.07 grams (*compare* D.I. 16 at A33 *with* A41).  In any event, to the extent this would be useful impeachment information, it was timely disclosed.

[12]Citing *Irwin*, the *Aricidiacono* Court stated, "In our prior decisions, we found that when defendants freely admitted their guilt by admitting that they possessed illegal narcotics, their lack of knowledge that the OCME's evidence-handling practices were seriously flawed and that some OCME employees had engaged in malfeasance, did not invalidate their pleas." *Aricidiacono*, 125 A.3d at 678-78.

> There is no evidence to date to suggest that proper testing of drugs submitted did not occur, or that the chemists were submitting false reports, or that critical evidence was withheld by the lab, or that there was any misconduct by the police in violation of a defendant's rights. When the smoke clears, what we have is a lab that suffered from systematic failures in protocol resulting in evidence being stolen, for either sale or personal consumption, and in some instances replaced with other drugs. While the defendants urge this Court to find any evidence stored at the OCME drug lab is *ipso facto* unreliable due to a lapse in management and protocol, the Court finds that such a blanket ruling is inappropriate.

*State v. Irwin*, 2014 WL 6734821, at *7, *9 (Del. Super. Ct. Nov. 17, 2014).

In short, the OCME evidence mishandling scandal constitutes impeachment evidence that cannot provide a basis for rendering a defendant's counseled decision to enter a guilty plea involuntary, especially when that defendant participated in a plea colloquy in open court, freely acknowledged his guilt, and has not asserted his factual innocence. Although knowledge of the OCME evidence mishandling scandal may have provided Petitioner with more bargaining leverage, it cannot be said that the lack of that knowledge rendered his guilty plea involuntary.

For these reasons, the Court concludes that the Delaware Supreme Court did not unreasonably determine the facts or unreasonably apply *Brady v. United States* to the facts of Petitioner's case when it held that Petitioner's guilty plea was not rendered involuntary due to his lack of knowledge about the OCME evidence mishandling scandal. Accordingly, the Court will deny Claim One (B) for failing to satisfy the standards set forth in § 2254(d)(1) and (d)(2).

### 3.   Claim Two: The Superior Court Prevented Petitioner From Developing Factual Record/Request for Evidentiary Hearing

Although Petitioner requested an evidentiary hearing in his Rule 61 proceeding, the Superior Court denied the Rule 61 motion without holding a hearing and without addressing the request. Petitioner alleges in Claim Two of his Petition:

> In the present case, [Petitioner] was denied all ability to further develop the factual record through compelled testimony. Specifically, the State Court denied [Petitioner's] request for an evidentiary hearing to question various members of Delaware's Attorney General Office and former employees of the OCME about their communications with one another and their knowledge of the problems at the OCME.  This information was critical to the determination of the true scope and magnitude of the State's *Brady* violation.  The State Court also denied [Petitioner] the ability to investigate and create a factual record of the chain of custody of the alleged drug evidence in this case as the State did not provide nor was the State ordered to produce the necessary chain of custody documents.  Lastly, the State Court denied [Petitioner] the ability to investigate and compel testimony in relation to the OCME's failure to test all of the alleged drug evidence in this case.
>
> As the State Court denied [Petitioner] the ability to fully investigate and to have a full and fair hearing in relation to his *Brady* claim, the State Court did not provide [Petitioner] with adequate factfinding procedures to create an adequate factual record to rule upon [Petitioner's] *Brady* claim.  Thus, this Court must hold an evidentiary hearing to allow for a complete and accurate factual record to be created in relation to [Petitioner's] claim.

(D.I. 2 at 27 (footnote omitted)) Petitioner argues in his Memorandum filed in support of the Petition:

> Although Due Process required the State Courts to hold an evidentiary hearing to allow [Petitioner] to further develop the factual record in relation to his postconviction claim, the State Courts concluded that no further expansion of the factual record was necessary and erroneously denied [Petitioner's] request for an evidentiary hearing.  As such, [Petitioner] respectfully requests that this Court hold an evidentiary hearing to allow [Petitioner] to present witnesses and evidence concerning his *Brady* claim.

(D.I. 15 at 54)  Based on the foregoing, it appears that Claim Two alleges both a due process violation as a ground for relief and a request for an evidentiary hearing.  For the following reasons, the Court concludes that neither assertion is availing.

### 1.  Due process argument

It is not the province of a federal habeas court to determine whether state courts have

properly applied their own evidentiary rules.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Rather, the only question for a habeas court is "whether the [challenged evidentiary decision or

instruction] by itself so infected the entire trial that the resulting conviction violates Due

Process." *Id.* at 72.

Here, Petitioner has not shown that the absence of an evidentiary hearing for his *Brady v.*

*Maryland* claim denied him rights guaranteed by the due process clause.  Delaware Superior

Court Criminal Rule 61(h) grants the Superior Court discretion in deciding whether to conduct

an evidentiary hearing in connection with a Rule 61 post-conviction relief motion.  *See* Del.

Super. Ct. R. 61(h)(1),(3).  The Superior Court does not abuse its discretion in denying an

evidentiary hearing request if the record is sufficient to establish that the petitioner's claims lack

merit.  *See Johnson v. State*, 129 A.3d 882 (Table), 2015 WL 8528889, at *4 (Del.  Dec. 10,

2015).

In his Rule 61 proceeding, Petitioner asked the Delaware Superior Court to conduct an

evidentiary hearing "to compel testimony in relation to the scope of knowledge that various

members of the Attorney General's Office were possibly aware of, but did not disclose to

[Petitioner]."  (D.I. 16-6 at 71)  Petitioner also sought to create a "chain of custody" for

"documents relating to the suspected cocaine and marijuana."  (D.I. 16-6 at 72)  However, the

Superior Court had before it the transcript of Petitioner's plea colloquy, the Rule 61 affidavit

from Petitioner's defense counsel (D.I. 16-8 at 8-9), the State's response to the Rule 61 motion

(explaining in depth the alleged discrepancies in weight of the drug evidence) (D.I. 16-8 at 10-

13), the information Petitioner's post-conviction counsel collected regarding the OCME

evidence mishandling scandal during his independent investigation for Petitioner's Rule 61 motion, and the formal results of the Delaware Department of Justice's investigation into the OCME evidence mishandling scandal, all of which provided a sufficient basis for the Superior Court to decide Petitioner's Rule 61 motion. *See Pennewell v. State*, 884 A.2d 512 (Table), 2005 WL 578444, at * 2 (Del. Jan. 26, 2005).

Permitting Petitioner to present additional impeachment evidence or further explore issues he waived by virtue of his 2010 guilty plea would not have aided the Superior Court in ruling on Petitioner's *Brady* claim. For instance, taking testimony from Deputy Attorneys General about their knowledge of OCME issues would have added nothing to Petitioner's Rule 61 motion. Petitioner pled guilty on January 25, 2010, yet the discovery of the OCME discrepancies did not occur until January 14, 2014.

Likewise, there was no need for an evidentiary hearing to trace the chain of custody of Petitioner's drug evidence, because Petitioner waived the right to pursue any possible suppression motion on that basis when he pled guilty in 2010 and accepted the benefits of the State's plea offer.

Finally, Petitioner's catchall argument that an evidentiary hearing was needed to create a complete factual record for his *Brady* claim fails for the same reason — Petitioner waived the right to learn about *Brady* impeachment evidence when he pled guilty in January 2010. At the January 25, 2010 Superior Court guilty plea colloquy, Petitioner was specifically asked if he admitted his guilt to the PWITD cocaine charge, and he answered "Yes." (D.I. 16 at 56) As previously explained, Petitioner is bound by the admissions he made during his 2010 guilty plea colloquy. *See supra* at Section IV.A.2; *see also Blackledge*, 431 U.S. at 73–74. Since he is

bound by his prior incriminatory admissions, Petitioner had no right to an evidentiary hearing to explore further subjects he waived by virtue of his January 25, 2010 guilty plea.

Thus, to the extent Claim Two asserts that the Delaware state courts violated Petitioner's due process rights by denying his Rule 61 motion without holding an evidentiary hearing, the Court will deny the argument as meritless.

### 2.  Request for an evidentiary hearing in this proceeding

A habeas petitioner is not entitled to an evidentiary hearing in most cases. The Supreme Court has explained that "[a]lthough state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1401 (2011).  Typically, requests for an evidentiary hearing in a federal habeas proceeding are evaluated under 28 U.S.C. § 2254(e)(2), which provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that
>
> > (A)  the claim relies on –
> >
> > > (i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B)  the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

"In cases where an applicant for federal habeas relief is not barred from obtaining

an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a

hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S.465, 468

(2007); *see also* Rule 8 of the Rules Governing Section 2254 Cases in the United States

District Courts, 28 U.S.C. foll. § 2254. When deciding whether to grant a hearing, the "court

must consider whether such a hearing could enable an applicant to prove the petition's factual

allegations," taking into consideration the "deferential standards prescribed by 28 U.S.C. §

2254."  *Schriro*, 550 U.S. at 474.  An evidentiary hearing is not necessary if the issues can be

resolved by reference to the record developed in the state courts. *Id*.

The Court has determined that Petitioner's claims are meritless under § 2254(d)(1) and

(2), and Petitioner's assertions do not demonstrate how a hearing would advance his arguments.

Therefore, the Court will deny Petitioner's request for an evidentiary hearing.

## IV.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether

to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of

appealability is appropriate when a petitioner makes a "substantial showing of the denial of a

constitutional right" by demonstrating "that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *Slack v.

McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief.  In the

Court's view, reasonable jurists would not find this conclusion to be debatable.[13]  Accordingly,

the Court declines to issue a certificate of appealability.

---

[13] I acknowledge the very similar opinions by my colleagues on the same issues raised by the
same counsel.  *See Rust v. Phelps*, 2021 WL 965582 (D. Del. March 15, 2021); *King v.*

## V.   CONCLUSION

For the reasons discussed above, the Court will deny Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254.

The Court will enter an Order consistent with this Memorandum Opinion.

---

*DeMatteis*, 2020 WL 5822018 (D. Del. Sept. 30, 2020).  I have independently considered the issues even though much of the language in this opinion is the same as in the earlier opinions.